UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BETH ANN PADGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01893-TWP-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Beth Ann Padgett ("Ms. Padgett") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I. BACKGROUND

### A. Procedural History

On July 11, 2011, Ms. Padgett filed applications for DIB, alleging a disability onset date of December 2002, due to back problems, hepatitis C, neuropathy, arthritis, and cirrhosis. She later amended her alleged onset date to March 29, 2010. Her claims initially were denied on August 23, 2011, and again on reconsideration on September 15, 2011. Ms. Padgett filed a written request for a hearing on November 1, 2011. On July 27, 2012, a hearing was held before Administrative Law Judge Roxanne J. Kelsey (the "ALJ"). Ms. Padgett participated in the hearing and was represented by counsel. On August 23, 2012, the ALJ denied Ms. Padgett's applications

for DIB. On September 28, 2013, the Appeals Council denied Ms. Padgett's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Thereafter, Ms. Padgett filed this timely action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

At the time of her alleged disability onset date, Ms. Padgett was 54 years old, and she was 56 years old at the time of the ALJ's decision. Ms. Padgett lives with her husband and her 29 year old son. Her son does not work, but her husband maintains fulltime employment. Ms. Padgett's employment history includes working as a bartender, chair assistant, receptionist and waitress. She worked after her alleged onset date as a waitress but only for approximately 12 hours a week. She was unable to work more than that due to neuropathy in her feet and problems with her back and spine. Ms. Padgett has not worked since October 2011.

Ms. Padgett is able to drive short distances such as thirty minutes but otherwise gets fatigued. She has her GED. She is able to do "a little" bit of chores such as washing dishes and light vacuuming. She is also able to load and unload the laundry but needs help carrying it to and from the basement. She does not do any outside chores such as gardening. Her hobbies include leather braiding. Ms. Padgett seldom watches television or reads for entertainment. She gets along okay with other people and gets together with friends occasionally, approximately once every three weeks, to sit outside or have a cookout; however, her husband does the cooking. She uses her telephone alarm to remind her to take her medication.

Ms. Padgett was diagnosed with Hepatitis C in 2001. She testified that she underwent five weeks of Interferon treatment in March 2010, however, her red and white blood count plummeted and her doctor at the time said she was not qualified to continue treatment. At that time she was

working as a waitress three days a week. She then changed doctors and at the time of the hearing had been undergoing treatment for approximately eight or nine months and she had been virus free since week 12 of her treatment. She stated that she has been struggling with her blood work and she is on "rescue drugs" for her red and white cell count. The drugs have helped but she is still short of breath and anemic. She had six weeks left in her 48 week course of treatment. She has also dealt with funguses, itching, and rashes.

Ms. Padgett takes naps throughout the day for her fatigue but does not sleep due to restless leg syndrome. She has numbness problems with her hands due to neuropathy. Ms. Padgett testified that she has pain in her feet due to neuropathy and pain in her back. She has back pain if she does any lifting or bending over. Her feet hurt and are numb all the time and she takes Neurontin for this condition. Her medication is bad for her memory and it feels like a brain fog. She indicated that stretching helps her back and rubbing her feet is also helpful. She estimated that she can lift five to ten pounds and is able to sit for maybe 30 minutes. She can stay on her feet for about 30 minutes as well but could not stand that long in one place. She believes she could walk for about one minute. She stopped using alcohol in 2008 but smoked marijuana daily.

Ms. Padgett's medical records show that in September 2011 she switched physicians and began treatment with gastroenterologist and liver transplant specialist Dr. Paul Kwo ("Dr. Kwo") who noted that Ms. Padgett had genotype hepatitis C, with early cirrhosis. In December 2011, Ms. Padgett was tolerating therapy well except for some neutropenia, anemia, fatigue, abdominal cramping, and intermittent headaches, which Dr. Kwo explained was probably related to medications and abdominal cramping. In January 2012, fatigue remained an issue and Ms. Padgett had some atypical chest pain. Dr. Kwo found Plaintiff had on-treatment response to Peg-interferon

3

and ribavirin and Boceprevir. However, she was doing well, and was stable and up to date on screening for Hepatoma. Dr. Kwo noted that Ms. Padgett was managing the side effects well.

At an appointment with Dr. David Josephson ("Dr. Josephson") in January 2011, Ms. Padgett's gait and station were normal, her motor examination did not reveal any arm drift, weakness, tremor, or abnormal tone and sensory examination showed some mild decreased pinprick sensation distally in the lower extremities and upper extremities. Dr. Josephson noted evidence of both cervical spondylosis and sensory neuropathy. Ms. Padgett tried Elavil but this caused her to be drowsy and she could not tolerate it.

In August 2011, state agency medical consultant M. Brill, M.D., ("Dr. Brill") opined that Ms. Padgett could do light work except she can never climb ladders, ropes, or scaffolds. Dr. Brill additionally opined that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, should avoid unprotected heights, and could occasionally reach bilaterally overhead. This assessment was affirmed in September 2011 by state reviewing physician J. Sands, M.D.

In July 2012, Ms. Padgett's treating physician, Jama Edwards, M.D. reported diagnoses of hepatitis C, sensory neuropathy, cervical spondylosis with spinal stenosis, and liver cirrhosis. Dr. Edwards opined that Ms. Padgett could stand/walk for less than 1 hour in an 8 hour workday, sit for 1 hour in an 8 hour workday, occasionally and frequently lift less than five pounds, and can occasionally bend, stoop, and balance. Dr. Edwards also believed Ms. Padgett would likely be absent more than four days per month due to her impairments.

## II.   DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual Functional Capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the

relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the court reviews the ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Ms. Padgett met the insured status requirement of the Act through March 31, 2012. The ALJ then began the five-step analysis. At step one, the ALJ found that Ms. Padgett has not engaged in substantial gainful activity during the period of March 29, 2010, the amended alleged onset date, and March 31, 2012, the date last insured. At step two, the ALJ found that through the date last insured, Ms. Padgett has the severe impairments of spondylosis, arthritis; hepatitis C with neuropathy; and dysthymia. At step three, the ALJ found that "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." ([Filing No. 15-2 at ECF p.25](Filing No. 15-2 at ECF p.25).) At step four, the ALJ found that through the date last insured, Ms. Padgett had the RFC to perform light work as defined in 20 CFR 404.1567(b) except she could not climb ladders, ropes, or kneel. She could have no more than occasional exposure to concentrated, unprotected heights. She may have occasionally reached overhead with either upper extremity. She could not work on a production line or perform fast-paced work *(Id.)*. Based on this RFC, the ALJ found that Ms. Padgett could perform her past relevant work as an orthodontist chair side assistant and a bartender; thus, Ms. Padgett was not disabled.

### IV. DISCUSSION

In her request for judicial review, Ms. Padgett asserts the singular argument that the ALJ improperly discredited the opinion of her treating physician, Dr. Edwards. In the decision, the

7

ALJ states that Dr. Edwards' opinion deserves "little weight as these extreme allegations are not supported by the allegations." ([Filing No. 15-2 at ECF p. 29](#).)  Ms. Padgett argues that the ALJ failed to consider and address the factors listed in 20 CFR 404.1527(c) and 416.927(c) when determining the weight to give to Dr. Edwards' medical opinions.

As stated previously, on July 9, 2012, Dr. Edwards opined that Ms. Padgett could stand/walk for less than 15 minutes at one time for a total of less than 60 minutes in a workday. She could sit for 30 minutes at one time for a total of 60 minutes in a workday. She could lift less than five pounds on a frequent or occasional basis and could only occasionally bend, stoop or balance.  In addition, Ms. Padgett would be absent from work more than four days per month due to her impairments or treatment ([Filing No. 15-10 at ECF p.97](#)).

Ms. Padgett relies on the decision in *Lopez-Navarro v. Barnhart* for her argument that the ALJ erred in assigning little weight to Dr. Edwards' opinions. There, the district court explained, "Treating source opinions must be given special consideration. If it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence, the ALJ must give it controlling weight." *Lopez-Navarro v. Barnhart*, 207 F. Supp. 2d 870, 885 (E.D. Wis. 2002) (internal citation and quotation marks omitted). The district court further explained,

> If the ALJ finds that the opinion does not warrant controlling weight, the ALJ may not simply reject the opinion. SSR 96-2p. He still must evaluate the opinion's weight by looking at the length, nature and extent of the plaintiff and physician's treatment relationship, the degree to which the opinion is supported by evidence, the opinion's consistency with the record as a whole, whether the doctor is a specialist, and "other factors." 20 C.F.R. § 404.1527(d). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. Regardless of the weight the ALJ ultimately gives the treating source opinion, the ALJ must "give good reasons" for his decision.

*Id.*

Ms. Padgett argues that Dr. Edwards' opinion should have been adopted and given controlling weight by the ALJ. "However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p; *see also* 20 C.F.R. § 404.1527(d)(3). If the ALJ finds that the opinion does not warrant controlling weight, the ALJ may not simply reject the opinion. SSR 96-2p. He still must evaluate the opinion's weight by looking at the length, nature and extent of the plaintiff and physician's treatment relationship, the degree to which the opinion is supported by evidence, the opinion's consistency with the record as a whole, whether the doctor is a specialist, and "other factors." 20 C.F.R. Section 404.1527(d).

Here, the ALJ properly evaluated the factors. The ALJ found that Plaintiff could perform a range of light work with additional limitations to account for her impairments ([Filing No. 15-2 at ECF p. 26](Filing No. 15-2 at ECF p. 26)). Considering this RFC finding, an impartial vocational expert testified that Ms. Padgett could perform her past relevant work as an orthodontist's chair side assistant and as a bartender. The ALJ reasonably relied on the testimony of the vocational expert and found that Ms. Padgett was not disabled. Because substantial evidence supports the ALJ's conclusion that Ms. Padgett could perform her past relevant work, the Court affirms the ALJ's decision.

Ms. Padgett takes issue with the reasons stated by the ALJ and asks this Court to reweigh the reasoning, but the Court is not allowed to do that. For example, one of the reasons used by the ALJ to discredit and ignore Dr. Edwards' opinion was the fact that Ms. Padgett stated in January 2012 that she "did fairly strenuous workouts once or twice a week." Ms. Padgett argues the ALJ should have inquired "as to what Ms. Padgett considered a fairly strenuous workout or how long these workouts lasted." ([Filing No. 18 at ECF p. 10](Filing No. 18 at ECF p. 10).) However, in reviewing the ALJ's decision, this Court is not entitled to "reweigh the evidence, resolve conflicts, decide questions of credibility,

or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Upon review of the ALJ's decision, it is clear that the ALJ did not simply reject or completely ignore the opinions of Dr. Edwards. The ALJ considered and discussed at length the opinions of Dr. Edwards and compared those opinions with the clinical and laboratory diagnostic evidence and the medical opinions of Dr. Kwo, Dr. Josephson, and others. For example, the ALJ properly determined Ms. Padgett's RFC in light of all the evidence of record, including the medical opinions. The determination of an individual's RFC need not be based on a medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner. 20 C.F.R. ' 404.1527(e)(2). It was proper for the ALJ to assess all the medical and other evidence and determine Ms. Padgett's RFC. Further, the ALJ's RFC finding is supported by the opinions of two reviewing state agency physicians, who both found that Ms. Padgett could perform a range of light work with no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, occasional balancing, stooping, kneeling, crouching, or crawling, no exposure to unprotected heights, and only occasionally reaching bilaterally overhead.

The ALJ explained that she assigned little weight to Dr. Edwards' opinion because she concluded that the extreme limitations stated by Dr. Edwards were not supported by the record evidence. As an example, the ALJ pointed out evidence supporting Ms. Padgett's ability to continue to exercise and perform "fairly strenuous" workouts once or twice weekly, was inconsistent with her claims of significantly limiting fatigue. The ALJ also noted inconsistencies with Dr. Edwards' opinion that Ms. Padgett could not exceed one hour of standing, and Ms. Padgett's testimony that despite her spondylosis, she was able to work as a server for 12 hours a week (4 hours a day) following her alleged onset date of disability—a job that required light

10

exertion and standing/walking for more than the one hour restriction stated by Dr. Edwards. Ms. Padgett concedes in her brief that she worked in this capacity until October 2011. Additionally, the ALJ observed that Ms. Padgett testified she was able to travel to California for a San Diego vacation in December 2010, which was not consistent with her allegations of extreme fatigue. As the ALJ further noted, there is also a sharp contrast between the clinical findings recorded in Ms. Padgett's January 2011 neurological examination (by Dr. Josephson) and Dr. Edwards' opinion of her limitations ([Filing No. 15-8 at ECF p. 38](#)). For example, Dr. Josephson noted that Ms. Padgett's gait and station were normal, which did not support the extreme restrictions on standing and walking *Id.* Her motor examination did not reveal any arm drift, weakness, tremor, or abnormal tone. *Id*. Her sensory examination showed some mild decreased pinprick sensation distally in the lower extremities and upper extremities. *Id*. It was reasonable for the ALJ to conclude that these mild findings did not support a restriction of 1 hour of standing/walking a day or sitting for up to 1 hour a day. Because Dr. Edwards' opinion was not well-supported by objective medical evidence, it was entirely reasonable for the ALJ to give his opinion little weight. 20 C.F.R. § 404.1527(d)(2) (controlling weight given to treating physician opinion only if well-supported by medically acceptable objective evidence and not inconsistent with the other substantial evidence of record.

In addition, the two state agency physicians who saw all of the evidence found that Ms. Padgett was capable of performing a range of light work ([Filing No. 15-10 at ECF pp. 45-46](#), 52). It was entirely reasonable for the ALJ to consider the fact that the physician opinions of record were all consistent with one another, apart from the extreme opinion of Dr. Edwards. 20 C.F.R. § 404.1527(d)(2) (significant or controlling weight to treating physician's opinion if not inconsistent with other substantial evidence of record).

The ALJ addressed the weight she gave to each of the expert and non-expert opinions and the reasons for his decisions. The ALJ's determinations were supported by sufficient evidence, and any contrary evidence was adequately considered and addressed. Having determined that Ms. Padgett has an RFC to do her past relevant work as an orthodontist side chair assistant and a bartender, the ALJ concluded that Ms. Padgett is not disabled.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Ms. Padgett's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/31/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael G. Myers
Mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov